**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JASON PAUL SCHAEFER**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**, <br><br> Defendant. | Case No. 20-cv-2702 (CRC) |

**MEMORANDUM OPINION**

Plaintiff Jason Paul Schaefer, a federal inmate located in Beaumont, Texas, filed this Freedom of Information Act and Privacy Act lawsuit against the Environmental Protection Agency ("EPA"), seeking disclosure of documents about him and the criminal prosecution that led to his incarceration. After he filed suit, EPA conducted a search of multiple databases for records mentioning Schaefer or his criminal case. EPA produced all responsive records uncovered by its search, some with redactions. Both parties have moved for summary judgment. For the following reasons, the Court will grant EPA's motion and deny Schaefer's cross-motion.

**I.    Background**

Throughout 2017, Schaeffer had a series of escalating encounters with local and federal law enforcement in his home state of Oregon, involving the discharge of chemicals on Schaefer's property. Those run-ins ultimately led to an FBI search of Schaefer's home and his detonation of an improvised explosive device, which injured a federal officer. See United States v. Schaefer, 13 F.4th 875, 880–81 (9th Cir. 2021). Now incarcerated, Schaefer seeks to learn more about his criminal prosecution stemming from those 2017 events.

In April 2020, Schaefer mailed to EPA "a request under the Freedom of Information Act, and the Privacy Act," seeking "[a]ll information about myself, Jason Paul Schaefer" and "[e]verything in or related to Federal criminal case 3:17-CR-00400-HZ," his criminal prosecution in Oregon. Complaint ("Compl.") Attachment 1. For purposes of identifying himself, Schaefer's FOIA request also listed his date of birth, social security number, and the fact that he had lived in Oregon from 2013 to 2020. Id. EPA did not immediately reply, so Schaefer mailed an appeal to the agency in May. Compl. ¶ 9. Hearing no response, in September 2020, Schaefer filed a complaint in this Court seeking, among other things, an order requiring EPA to disclose the records sought in his April FOIA request. Id. at 5–6. In his complaint, Schaefer asserts that, in the course of the agency's 2017 criminal investigation, EPA agents illegally invaded his property, seized chemicals he lawfully possessed, damaged his apartment, and fabricated information to support search warrants later executed by the FBI. Id. ¶¶ 11–12. Schaefer further alleged that he believes some of the records covered by his FOIA request might constitute exculpatory evidence in his criminal case. Id. ¶ 14.

After receiving word of Schaefer's lawsuit, EPA created a FOIA matter for his request and began searching for responsive records. Declaration of Claude Walker in Support of EPA's MSJ ("Walker Decl.") ¶ 6. EPA conducted searches of several different databases and sources of potentially responsive records. First, EPA searched for information pertaining to Schaefer, including using his criminal case number, in the agency's Online Criminal Enforcement Activities Network ("OCEAN") database, a database that contains all information regarding EPA criminal cases. Id. ¶ 7. The search of the OCEAN database identified a total of 18 responsive records, all of which EPA produced to Schaefer (half with redactions). Id. ¶ 8. EPA also contacted a special agent with the agency's Criminal Investigative Division ("CID"), in the

region with jurisdiction over Schaefer's criminal case.  Id. ¶ 9.  After conferring with other agents involved in Schaefer's matter, the CID special agent confirmed that no responsive hardcopy or other records existed outside of the OCEAN database.  Id.

Next, EPA contacted personnel in its Region 10 Superfund Program Records Center, which maintains a database containing information regarding the agency's activities relating to clean-up of environmental spills, including ones that occurred at Schaefer's Oregon addresses. Id. ¶¶ 10–13.  EPA staff for that region followed their routine FOIA process for non-email records collection, notifying staff assigned to respond to the clean-up efforts involving Schaefer to submit all records for processing at the Superfund Program Records Center.  Id. ¶ 12.  A search of the Center's database, including the records submitted by EPA staff who dealt with Schaefer's case, yielded 10 records, all of which EPA produced (again, half with redactions).  Id. ¶ 13.

Finally, EPA conducted a search in its eDiscovery database, which compiles email records.  Id. ¶ 14.  Searching for Schaefer's name, social security number, date of birth, known addresses, and criminal case number, the eDiscovery search unearthed 34 records, 26 of which EPA released with redactions, and 8 of which it released in full.  Id. ¶ 15.

With production complete, the Court set a summary judgment briefing schedule.  See Minute Order (Sept. 28, 2021).  EPA filed a motion for summary judgment, and after initially failing to file a response, Schaefer filed an opposition and cross-motion.  Both motions are fully briefed and ripe for decision.

## II.  Legal Standards

The Court may grant summary judgment if the moving party shows that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law.  See

Fed. R. Civ. P. 56(c). Summary judgment to the agency in a FOIA case is appropriate if the agency "proves that it has fully discharged its obligations under FOIA, after the underlying facts and inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Bagwell v. U.S. Dep't of Just., 311 F. Supp. 3d 223, 228 (D.D.C. 2018) (Cooper, J.) (quoting Tushnet v. ICE, 246 F. Supp. 3d 422, 431 (D.D.C. 2017)). FOIA cases are typically resolved on summary judgment. See Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011).

To prevail on summary judgment in a FOIA matter, the agency must first show that it conducted an adequate search for the requested records. "For a search to be adequate, an agency must show 'beyond material doubt that its search was reasonably calculated to uncover all relevant documents.'" Bagwell, 311 F. Supp. 3d at 228 (quoting Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011)). That is, the issue is "whether the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991). The plaintiff's "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." Id. To show that its search was reasonable, the agency may rely on affidavits that detail "what records were searched, by whom, and through what process." Steinberg v. U.S. Dep't of Just., 23 F.3d 548, 552 (D.C. Cir. 1994). Such affidavits are "accorded a presumption of good faith." SafeCard, 926 F.2d at 1200.

Second, an agency must adequately justify any withholdings it makes under FOIA's exemptions from disclosure. Bagwell, 311 F. Supp. 3d at 228. Because FOIA is designed to "establish a general philosophy of full agency disclosure unless information is exempted under

clearly delineated statutory language," NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 136 (1975) (citation omitted), the statute's exemptions are construed narrowly, and the agency bears the burden of justifying every withholding, Bagwell, 311 F. Supp. 3d at 29.

### III. Analysis

Because much of Schaefer's briefing is focused on his argument that EPA has failed to comply with the Privacy Act, the Court begins by addressing whether Schaefer has a viable claim under that statute. The Court then turns to the adequacy of EPA's search and the agency's invocation of exemptions under the FOIA framework.

    A. Privacy Act

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used, and by imposing responsibilities on federal agencies to maintain their records accurately." Powell v. IRS, 255 F. Supp. 3d 33, 41 (D.D.C. 2017) (quoting Mobley v. CIA, 806 F.3d 568, 585 (D.C. Cir. 2015)). Under the statute, "[e]ach agency that maintains a system of records" must provide an individual access to "his record or to any information pertaining to him which is contained in the system" upon the individual's request. 5 U.S.C. § 552a(d)(1). A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." Id. § 552a(a)(5). If the agency does not permit the requester to review the relevant records, he may bring a civil action against the agency in district court and "enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him." Id. § 552a(g)(3)(A); see

also id. § 552a(g)(1)(B).  To implement the statute, each agency is responsible for promulgating rules to "establish procedures" and "define reasonable times, places, and requirements for identifying an individual who requests his record or information pertaining to him before the agency shall make the record or information available to the individual."  Id. § 552a(f).

In accordance with the statute, EPA has established procedures that individuals must follow to submit a request to review records under the Privacy Act.  Specifically, 40 C.F.R. § 16.3 provides that any individual who "[s]eeks access to an EPA record about him or her that is maintained in an EPA [Privacy Act] system of records" must submit a request that includes the "name and signature of the individual making the request," the "name of the [Privacy Act] system of records . . . to which the request relates," and a "statement whether a personal inspection of the records or a copy of them by mail is desired."  Id. § 16.3(b)(1)–(3).  The individual's request must also include a "statement declaring his or her identity and stipulating that he or she understands it is a misdemeanor punishable by fine up to $5,000 to knowingly and willfully seek or obtain access to records about another individual under false pretenses."  Id. § 16.3(c).  Apparently acknowledging that many people may not know what systems of records EPA maintains, let alone which systems may contain information about them, the regulations further instruct that a "requester who cannot determine which . . . system of records to request may ask for assistance by writing to the" EPA's Privacy Act Officer by mail, email, or fax.  Id. § 16.3(d).

Here, Schaefer's document request, although it mentions the Privacy Act, did not comply with EPA's regulations by identifying the name of the system of records to which his request related, see Compl. Attachment 1, and neither Schaefer nor the agency has pointed to evidence that he contacted EPA to ask for assistance in determining any systems of records applicable to

his request, EPA Reply at 3.  Schaefer's request also did not include the statement required by 40 C.F.R. § 16.3(c), although he did sign the request "under penalty for perjury."  See Compl. Attachment 1, at 2.  These procedural requirements may sound like technicalities, but courts routinely dismiss Privacy Act claims under exactly these circumstances—when an individual's request for documents does not conform to the specifications set out in the agency's regulations.  See, e.g., Powell, 255 F. Supp. 3d at 41–42 (dismissing Privacy Act claim when request "did not specify the name and location of the particular system of records as set forth in the [agency's] Notice of Systems"); Scaife v. IRS, No. CIV.A. 02-1805 (JR), 2003 WL 23112791, at *3 (D.D.C. Nov. 20, 2003) (dismissing Privacy Act claim when plaintiff "failed to give the name of the system or subsystem or categories of records to which he had sought access" pursuant to agency regulations); Lee v. U.S. Dep't of Just., 235 F.R.D. 274, 285 (W.D. Pa. 2006) ("For a FOIA/PA access request to be proper, it must be made in accordance with the agency's published regulations regarding, *inter alia*, procedures to be followed.").  What's more, it makes sense that an agency might insist on strict compliance with its rules in the Privacy Act context; unlike FOIA, the Privacy Act "does not have disclosure as its primary goal and instead uses disclosure as a tool to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies."  Powell, 255 F. Supp. 3d at 41 (quoting Mobley, 806 F.3d at 586).

      Beyond characterizing EPA's reliance on its regulations as an "irresponsible, anti-democratic excuse" and emphasizing that he signed his request "under penalty of perjury," Schaefer Reply at 1–4, Schaefer's only argument is that EPA waived any defense to his Privacy Act claim by failing to brief that issue in its opening motion, Schaefer MSJ at 1–3, 8.  Although a party's failure to raise an issue in its opening brief usually constitutes waiver, the Court has

discretion to consider such arguments where the other party had the opportunity to respond. Goodrich v. Teets, 510 F. Supp. 2d 130, 143 (D.D.C. 2007); accord White Coat Waste Project v. U.S. Dep't of Veterans Affs., 443 F. Supp. 3d 176, 198 (D.D.C. 2020); Rosenberg v. U.S. Dep't of Immigr. & Customs Enf't, 13 F. Supp. 3d 92, 115–16 (D.D.C. 2014). Because Schaefer had that opportunity here, EPA is entitled to summary judgment as to his Privacy Act claim.[1]

B. FOIA

Turning to FOIA, the Court first concludes that EPA conducted an adequate search in this case and then discusses the agency's asserted exemptions from disclosure.

1. *Adequate Search*

The Court has no trouble concluding that EPA's search for records in this case "was reasonably calculated to uncover all relevant documents." Bagwell, 311 F. Supp. 3d at 228 (quoting Ancient Coin Collectors Guild, 641 F.3d at 514). To start, it is unclear whether Schaefer even contests the adequacy of the agency's search. On the one hand, his statement of material facts not in dispute concedes that EPA "conducted an Adequate Search for records responsive to this civil action upon its filing, as it relates to the Freedom of Information Act." Schaefer Stmt. of Material Facts Not in Genuine Dispute ¶ 3. On the other hand, Schaefer accuses the agency of failing to search for photographs of the inside of his apartment, which he believes law enforcement officers took in April 2017. Schaefer MSJ at 3. Although Schaefer

---

[1] At the end of his reply, Schaefer asserts that he "has submitted by mail a revised FOIA/Privacy Act Request which adheres to the Defendant's bad-faith, hypertechnical regulations, and, a letter which specifically seeks information about Privacy Act systems of records." Schaefer Reply at 7. But Schaefer has not attached this request or suggested why a new, compliant request should preclude summary judgment in this case, which is based on his April 2020 request.

8

appears to cabin that dispute to his Privacy Act claim, the Court will address it here briefly anyway.

On summary judgment, an agency can carry its burden as to adequacy by submitting a reasonably detailed affidavit "setting forth the search terms and the type of search performed and averring that all files likely to contain responsive materials . . . were searched." Iturralde v. Comptroller of Currency, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (alteration in original). The Walker declaration in this case does just that. In response to Schaefer's extremely broad request—which sought any documents relating to him or his criminal case—the agency reasonably searched its OCEAN database, which contains records relating to criminal investigations and prosecutions; contacted a CID special agent in the jurisdiction that was assigned to Schaefer's criminal case; queried the jurisdiction's Superfund Program Records Center database, which stores information regarding EPA environmental cleanup efforts; and ran an even broader eDiscovery search for any electronically stored information that included Schaefer's name, social security number, date of birth, criminal case number, and known addresses. See Walker Decl. ¶¶ 7–15. The Walker declaration further affirms that EPA "searched all locations reasonably likely to have records responsive to Plaintiff's FOIA request." Id. ¶ 15. EPA's fairly comprehensive search for documents relating to Schaefer was reasonably calculated to uncover responsive records.

In challenging the adequacy of the agency's search, Schaefer cannot rest "on mere conjecture or 'purely speculative claims about the existence and discoverability of other documents" not produced. Sheffield v. Holder, 951 F. Supp. 2d 98, 101 (D.D.C. 2013) (quoting Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec., 384 F. Supp. 2d 100, 107 (D.D.C. 2005)). Schaefer's basis for thinking EPA's search was inadequate is nothing more than his belief that

9

"Defendant would have taken pictures throughout the search" of his apartment "as a matter of routine practice, training, and preservation of evidence." Schaefer MSJ at 3. That speculation cannot defeat summary judgment in this case.

    2. *Exemptions*

EPA did not withhold any documents uncovered during its searches, but it redacted information in the majority of records produced. Walker Decl. ¶¶ 8, 13, 15. EPA justifies these redactions under FOIA Exemption 4 (trade secrets and commercial or financial information), Exemption 5 (deliberative process privilege and attorney-client privilege), Exemption 6 (personnel information), and Exemption 7(C) (invasion of personal privacy in law enforcement records). See generally Vaughn Index, ECF No. 17-12. Schaefer has disclaimed any interest in the one document redacted pursuant to Exemption 4. See Schaefer Reply at 6. He has likewise waived any interest in an April 2017 email which EPA redacted under Exemption 5 pursuant to the attorney-client privilege. See Schaefer MSJ at 2. The Court thus restricts its analysis to EPA's invocations of Exemption 5's deliberative process privilege and Exemptions 6 and 7(C).

    a. Exemption 5

FOIA Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This means, in effect, privileged documents that originated with the agency. Touarsi v. U.S. Dep't of Just., 78 F. Supp. 3d 332, 344 (D.D.C. 2015). Here, EPA invoked the deliberative process privilege to redact the body of one email dated October 12, 2017 (ED_005612_000002813) and two emails dated October 30, 2017 (EPA 0402 and ED_005612_00002697).[2] The deliberative process privilege protects an inter-agency or intra-agency document that is "predecisional" and

---

[2] The two October 30 emails contain the same redacted text. Vaughn Index at 3 n.1.

10

"deliberative." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). The privilege applies if "the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion" in the agency and thereby "undermine the agency's ability to perform its functions." Env't Integrity Project v. Small Bus. Admin., 125 F. Supp. 3d 173, 176–77 (D.D.C. 2015) (quoting Formaldehyde Inst. v. U.S. Dep't of Health & Hum. Servs., 889 F.2d 1118, 1122 (D.C. Cir. 1989)). "A predecisional document is one prepared in order to assist an agency decisionmaker in arriving at a decision, and may include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" Id. at 176 (quoting Coastal States, 617 F.2d at 866). A document is "deliberative" when it "reflects the give-and-take of the consultative process." Coastal States, 617 F.2d at 866.

"Determining whether a document is deliberative," however, "is less straightforward than determining whether it is predecisional" Jud. Watch, Inc. v. U.S. Dep't of Just., 20 F.4th 49, 55 (D.C. Cir. 2021). The application of the deliberative process privilege depends "upon the individual document and the role it plays in the administrative process." Id. (quoting Coastal States, 617 F.2d at 867). Accordingly, the agency asserting the deliberative process privilege must sufficiently explain the "'who,' 'what,' 'where,' and 'how' of the deliberative process and the role played by the withheld material." Id. at 57. That is, the agency's submissions should spell out "the roles of the document drafters and recipients and their places in the chain of command," the "nature of the withheld content," the "stage within the broader deliberative process in which the withheld material operates," and the "way in which the withheld material facilitated agency deliberation." Id. at 56.

According to the agency's Vaughn Index, the October 12 email includes an exchange between an EPA CID special agent and his or her supervisor, discussing the possibility of settling criminal charges in a prosecution separate from Schaefer's. Vaughn Index at 4. The October 30 emails reflect a discussion between EPA and FBI law enforcement personnel concerning whether the government would bring criminal charges against Schaefer. Id. at 2–3. Specifically, the emails concern an EPA CID special agent's request for continued coordination with the FBI as it deliberates whether to pursue criminal charges. Id. These emails comfortably fall within Exemption 5. "[T]he deliberative process privilege may be invoked to shield deliberative documents prepared prior to criminal prosecution and other law enforcement decisions." Astley v. Lawson, No. CIV. A. 89-2806(CRR), 1991 WL 7162, at *7 (D.D.C. Jan. 11, 1991); accord Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Just., 823 F.2d 574, 585 n.38 (D.C. Cir. 1987) ("We are mindful that the process leading to a decision to initiate, or to forego, prosecution is squarely within the scope of th[e deliberative process] privilege."); Novak v. Dep't of Just., No. CIV.A. 11-0466 RLW, 2013 WL 530965, at *3 (D.D.C. Feb. 12, 2013) (holding deliberative process privilege applied to records prepared during pendency of criminal prosecution of the plaintiff to advise counsel on whether to appeal a decision suppressing evidence). As described in the Vaughn Index, the October emails are "deliberative" because they reflect personnel considerations about charging Schaefer and settling a different criminal matter, and they are "predecisional" because they preceded the decisions actually to charge him and to settle the unrelated case. Vaughn Index at 3.

Further, EPA's descriptions of the withheld information satisfy the level of detail required by Judicial Watch. As for the October 12 email, the Vaughn Index specifies the "roles of the document drafters and recipients and their places in the chain of command," Jud. Watch,

12

20 F.4th at 56, explaining that the message was sent from a CID special agent to his or her supervisor, Vaughn Index at 4.  The Vaughn Index also describes the nature of the withheld content—"information shared between Agency personnel about settlement information" in a separate criminal matter "provided by the Department of Justice"—and states that disclosing these "individual staff thoughts and opinions concerning settlement of a criminal matter" would harm the "ability of staff to frankly discuss settlement negotiations internally" and "chill future negotiations."  Vaughn Index at 4–5.  As for the October 30 emails, the Vaughn index likewise specifies that the message was sent from an EPA CID special agent to an FBI agent in the context of the agencies' coordinated criminal investigation into Schaefer.  Id. at 2.  The withheld content includes the EPA employee's "thoughts, questions and ideas regarding whether or not to bring criminal charges that were under consideration at the time," id. at 3, and the Vaughn Index avers that release of that material would chill EPA investigators' ability "to effectively coordinate with outside agencies, like FBI, on criminal matters," id.  Here, therefore, EPA has shown that the emails "discuss and debate proposed agency . . . actions" and do not "simply describe already-made and in-place policy choices."  Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 367 (D.C. Cir. 2021).

      Schaefer's two arguments for why Exemption 5 does not cover the October emails do not hold water.  First, Schaefer objects that "there is no agency decisionmaker and no agency decision" because the "U.S. Attorney's Office of the Department of Justice," not EPA, "determines what cases to prosecute."  Schaefer MSJ at 2, 4–5.  But even when "a second agency" has "final decisional authority" over a question, "views submitted by one agency" to the other "are predecisional materials exempt from disclosure under FOIA."  Bureau of Nat'l Affs., Inc. v. U.S. Dep't of Just., 742 F.2d 1484, 1497 (D.C. Cir. 1984) (citing Renegotiation Bd. v.

Grumman Aircraft, 421 U.S. 168, 187–88 (1975)). "Claiming the deliberative process privilege for the documents at issue does not require [EPA personnel] to exercise direct decision-making authority, as long as they are involved in deliberations that will contribute to policy choices made by" another agency. Soghoian v. Off. of Mgmt. & Budget, 932 F. Supp. 2d 167, 178 (D.D.C. 2013). Indeed, "Exemption 5, by its own terms, reaches 'inter-agency' communications." Am. Ctr. for Law & Just. v. U.S. Dep't of Just., 325 F. Supp. 3d 162, 172 n.3 (D.D.C. 2018).

Second, Schaefer posits that he has been "wrongfully convicted on fabricated evidence" and that the records he seeks "may prove the FBI lied to convict him." Schaefer MSJ at 2; see id. at 5–6 ("The Plaintiff is concerned the records contain admissions of wrong-doing by Federal officers and/or admissions that charges levied by U.S. Attorneys are fraudulent."). Construing this allegation liberally, the Court understands Schaefer to be invoking the exception to the deliberative process privilege "when there is reason to believe the documents sought may shed light on government misconduct." Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs., 903 F. Supp. 2d 59, 66 (D.D.C. 2012) (quoting In re Sealed Case, 121 F.3d 729, 738 (D.C. Cir. 1997)). Although the misconduct Schaefer hypothesizes would be the kind of "extreme government wrongdoing" that could justify invocation of this exception, ICM Registry, LLC v. U.S. Dep't of Com., 538 F. Supp. 2d 130, 133 (D.D.C. 2008), he has offered no factual basis to believe that the October 2017 email might reveal any such misconduct, Wisdom v. U.S. Tr. Program, 266 F. Supp. 3d 93, 106 (D.D.C. 2017) ("The party seeking to overcome the privilege bears the burden of providing 'an adequate basis for believing that [the documents] would shed light upon government misconduct.'" (alteration in original) (quoting Nat'l Whistleblower Ctr., 903 F. Supp. 2d at 67)).

Accordingly, the Court concludes that EPA has properly invoked Exemption 5.[3]

### b. Exemptions 6 and 7(C)

Last, EPA has invoked FOIA Exemptions 6 and 7(C) to redact certain limited information from agency emails, reports, correspondence, and subpoenas responsive to Schaefer's request. See Vaughn Index at 1. Specifically, EPA redacted "cell phone numbers for Agency employees, the names, email addresses, and phones numbers of law enforcement personnel, and personally identifying information (e.g. names, dates of birth, social security numbers, addresses, etc.) of witnesses and interviewees pertaining to criminal investigations, and non-U.S. government license plate numbers." Id.

Exemption 6 permits the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" includes "all information that applies to a particular individual," and material falls within the exemption when the interest in "the protection of an individual's private affairs from unnecessary public scrutiny" outweighs "the preservation of the public's right to governmental information." Lepelletier v. FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting U.S. Dep't of Def., Dep't of Military Affs. v. FLRA, 964 F.2d 26, 29 (D.C. Cir. 1992)). Similarly, Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). As with Exemption 6, "the court must balance the privacy interests involved against the public interest in disclosure." SafeCard, 926 F.2d at 1205.

---

[3] Schaefer nowhere argues that EPA has failed to produce segregable information from these redacted emails, and "the description of the document set forth in the Vaughn index" combined with "the agency's declaration that it released all segregable material" is in any event sufficient to carry its burden as to segregability. Loving v. Dep't of Def., 550 F.3d 32, 41 (D.C. Cir. 2008).

The information redacted here—names, contact information, and similar personally identifying information of law enforcement officers, witnesses, and interviewees involved in Schaefer's criminal case—falls within Exemptions 6 and 7(C). "Redaction of the names of law enforcement personnel under similar circumstances routinely is upheld." Banks v. Dep't of Just., 538 F. Supp. 2d 228, 240 (D.D.C. 2008). Contrary to Schaefer's assertion that these officials, as public servants, lack any viable privacy interest in their names, Schaefer MSJ at 6–7, officers "have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives," Lesar v. U.S. Dep't of Just., 636 F.2d 472, 487 (D.C. Cir. 1980). The same goes for the names, contact information, and other personally identifying information of other private individuals—such as witnesses or interviewees—who are mentioned in law enforcement records. When it comes to information like the "names and addresses of third parties mentioned in witness interviews," the "privacy interest at stake is substantial' and the "public interest in disclosure is not just less substantial, it is insubstantial." SafeCard, 926 F.2d at 1205; see also, e.g., Hodge v. FBI, 703 F.3d 575, 580–81 (D.C. Cir. 2013) ("Moreover, we have recognized that private citizens—such as witnesses, informants, and suspects—have particularly strong privacy interests."); Senate of the Commonwealth of Puerto Rico, 823 F.2d at 588 ("Other persons involved in the investigation—witnesses, informants, and the investigating agents—also have a substantial interest in seeing that their participation remains secret."); Woodward v. U.S. Marshals Serv., No. CV 18-1249 (RC), 2022 WL 17961289, at *10 (D.D.C. Dec. 27, 2022) (redaction of "personally identifying information, including names, telephone numbers, and license-plate numbers of law enforcement and third parties" appropriate under Exemptions 6 and 7(C)).

Aside from the misguided suggestion that law enforcement officers and witnesses have no privacy interest under FOIA, Schaefer's remaining arguments appear to rest on two misunderstandings.  First, Schaefer disclaims any interest in names or contact information but stresses that he wants "the contents of the interviews."  Schaefer MSJ at 7.  But EPA did not withhold any responsive documents or redact the contents of any interviews; its redactions "were made only to the specific phone and license plate numbers, law enforcement personnel identifying information, and the personally identifying information of witnesses and interviewees of criminal investigations."  Vaughn Index at 2.  The documents turned over to Schaefer, in which those targeted redactions were made, include "law enforcement reports regarding Plaintiff's criminal matter," which may advert to witness interviews.  Id. at 1.  But nothing in the submissions to the Court indicates that EPA withheld or redacted anything beyond the limited, personally identifying information recounted above, let alone the contents of entire interviews.  Schaefer's apparent speculation to the contrary is unavailing.  SafeCard, 926 F.2d at 1200–01.

Second, Schaefer appears to have misinterpreted EPA's statement in its motion that "[m]ost of Defendant's partial withholdings" protected personal information from disclosure under Exemptions 6 and 7(C) to suggest that EPA is secretly withholding some number of documents, which it has not specifically described.  EPA MSJ at 8; Schaefer MSJ at 7–8.  As he contemplates in his own motion, Schaefer "is misunderstanding something" about that statement.  Schaefer MSJ at 7.  As the agency explains in its reply, the reference to "most of" EPA's partial withholdings indicated that the majority of the agency's redactions fell within Exemptions 6 and 7(C), compared to the few redactions made pursuant to other exemptions.  See EPA Reply at 10–11.  There is no evidence or reason to believe that EPA is maintaining a secret trove of

unproduced documents responsive to Schaefer's request. SafeCard, 926 F.2d at 1200–01 (agency affidavits are "accorded a presumption of good faith").

Accordingly, the Court concludes that EPA has properly invoked Exemptions 6 and 7(C) to justify the limited redactions of names, contact information, and other personal identifiers from its production of documents.

C. Schaefer's Motions for In Camera Review and Preliminary Injunction

The Court will also briefly address two other motions Schaefer has filed in this case, one for in camera review and another for a preliminary injunction against the federal prison in Beaumont, Texas.

First, Schaefer requests that the Court review the records discussed above in camera, contending that EPA's affidavit and Vaughn Index were insufficiently specific regarding the agency's redactions. See Request for In Camera Review, ECF No. 28. In camera review is not warranted here. The Court has "'broad discretion' to decide whether *in camera* review is necessary to determine whether the government has met its burden" of demonstrating that no reasonably segregable information has been withheld. Loving, 550 F.3d at 41 (quoting Armstrong v. Exec. Off. of the President, 97 F.3d 575, 577–78 (D.C. Cir. 1996)). Here, EPA's description of the documents at issue is sufficiently specific. As for the emails redacted under Exemption 5, EPA has described the redacted emails as messages among EPA and FBI law enforcement personnel discussing the agencies' deliberations about whether to bring criminal charges against Schaefer, settle another matter, and engage in continued coordination. Vaughn Index at 2–5. As for the materials redacted under Exemptions 6 and 7(C), the agency explained that the redacted records consist of "Agency emails, Agency reports with attached exhibits describing clean-up efforts, law enforcement reports regarding Plaintiff's criminal matter, and

Agency correspondence and subpoenas." Id. at 1.  Further, EPA has explained that its staff conducted a line-by-line review of all responsive documents and released all reasonably segregable information.  Walker Decl. ¶ 27; see also Vaughn Index at 1–2 (explaining that redactions under Exemptions 6 and 7(C) were limited to "cell phone numbers for Agency employees, the names, email addresses, and phones numbers of law enforcement personnel, and personally identifying information (e.g. names, dates of birth, social security numbers, addresses, etc.) of witnesses and interviewees pertaining to criminal investigations, and non-U.S. government license plate numbers").  Because "the agency's affidavits provide specific information sufficient to place the documents within the exemption categor[ies]," that information "is not contradicted in the record," and "there is no evidence in the record of agency bad faith," summary judgment "is appropriate without *in camera* review of the documents." Ctr. for Pub. Integrity v. FEC, 332 F. Supp. 3d 174, 181 (D.D.C. 2018) (Cooper, J.) (quoting ACLU v. Dep't of Def., 628 F.3d 612, 626 (D.C. Cir. 2011)); see also Loving, 550 F.3d at 41.

Second, in the midst of summary judgment briefing in this case, Schaefer also filed a motion for a preliminary injunction or temporary restraining order directed not at the Defendant in this case but instead to the United States Penitentiary where he is in custody.  See Schaefer Motion for Preliminary Injunction, ECF No. 29.  Specifically, Schaefer asks that the Court order the Beaumont U.S. Penitentiary to permit him to seal all legal mail before he mails it, to adhere to Bureau of Prisons policies when handling his incoming mail, and to produce mail to him that he believes has been withheld, namely a publication about FOIA and Privacy Act litigation which he ordered from Amazon.com.  Id. at 1–2.  Schaefer does not contend that any of his difficulties with mail have prevented him from receiving any of the briefing or materials in this case.  In any event, the Court is "powerless to issue an injunction against" the Penitentiary

19

because it is not a party to this case.  Hamilton v. TSA, 240 F. Supp. 3d 203, 205 (D.D.C. 2016) (quoting Citizens Alert Regarding the Env't v. EPA, 259 F. Supp. 2d 9, 17 n.7 (D.D.C. 2003)); accord Bailey v. U.S. Marshal Serv., No. CIV.A.08-0283(CKK), 2009 WL 949085, at *1 (D.D.C. Apr. 6, 2009); see Fed. R. Civ. P. 65(d)(2).  The Court will therefore deny this motion as well.

## IV. Conclusion

For these reasons, the Court will grant Defendant's Motion for Summary Judgment, deny Schaefer's Cross-Motion for Summary Judgment, and deny Schaefer's motions for in camera review and a preliminary injunction.

A separate Order shall accompany this opinion.

_____

CHRISTOPHER R. COOPER
United States District Judge

Date: March 28, 2023